# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEREK A. CAPOZZI,** | **:** | |
| **Plaintiff,** | **:** | **CIVIL ACTION NO. 1:11-1628** |
| **v.** | **:** | **(KANE, C.J.)** |
| | | **(MANNION, M.J.)** |
| **PIGOS, MARC HOLBROOK,** | **:** | |
| **MICHAEL J. GROWSE, COLL,** | | |
| **VARIOUS OTHER [UNKNOWN]** | **:** | |
| **B.O.P. EMPLOYEES, and UNITED** | | |
| **STATES OF AMERICA,** | **:** | |
| **Defendants.** | **:** | |

## REPORT AND RECOMMENDATION[1]

Presently before the court is the defendants' motion to dismiss the plaintiff's complaint or, in the alternative, for summary judgment. (Doc. No. 27). The plaintiff, an inmate at the United States Penitentiary at Lewisburg, Pennsylvania, (hereinafter "USP-Lewisburg") brings the instant *Bivens*[2] action, alleging inadequate medical care. (Doc. No. 1). The court recommends that the plaintiff's complaints of Fifth and Fourteenth Amendment due process and

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

[2] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971).

equal protection violations, as well as discrimination under the Americans with Disabilities Act and wire fraud under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), be **DISMISSED**. Applying the summary judgment standard to the plaintiff's Eighth Amendment and conspiracy claims, the court recommends that the defendants motion be **GRANTED**.

## I.   FACTUAL BACKGROUND[3]

The plaintiff medical conditions stem from a 2008 incident involving another inmate at the United States Penitentiary at Victorville, California. During that incident, the plaintiff was stabbed several times in the neck and chest. The plaintiff was treated for his injuries, which included surgery to repair damage to the plaintiff's heart from one of the stab wounds. The plaintiff was evaluated by cardio-thoracic surgeons, one of whom suggested that the plaintiff may need additional surgery to repair a "hole" in is heart.

---

[3] Pursuant to Local Rule 56, the defendants filed a statement of material facts in support of their motion, (Doc. No. 30). The plaintiff subsequently filed an answer to the statement of facts, (Doc. No. 39), as well as a counterstatement of facts, (Doc. No. 40). In addition, the plaintiff recounts some essential facts in his complaint, (Doc. No. 1), which are not fully recited in his statement of material facts. To the extent that any facts are disputed, the court will cite appropriately to the source of the controverted allegation of fact.

(Doc. No. 1 at 16). The plaintiff also asserts that in August 2008, a doctor at USP-Victorville recommended that he have an echocardiogram and Holter monitor as part of his ongoing evaluation. (Doc. No. 40 at 2). In August or September 2008 the plaintiff was transferred to the United States Penitentiary at McCreary, Kentucky without receiving additional surgery or recommended evaluations.

The plaintiff complained of chest pains while at USP-McCreary. The plaintiff was eventually taken to a cardiologist who performed an echocardiogram on April 15, 2009. (Doc. No. 40 at 2). The plaintiff states that the doctors recommended that the plaintiff be referred to cardiac center for a transesophageal echocardiogram and evaluation by a cardiac surgeon, that repair of his heart was "likely" needed, and that the plaintiff should limit athletic activities until he was evaluated. (Doc. No. 40 at 3). The plaintiff continued to complain of chest pain and, on May 22, 2009 an x-ray was taken revealing a "broken third sternal wire." (Doc. No. 40 at 4). The plaintiff continued to complain of pain and, on June 29, 2009, was brought to a cardiologist and cardiac surgeon where he had a transesophageal echocardiogram. (Id.) The plaintiff states that he further discussed possible surgery options with the doctors, but no official recommendation is apparent

3

in the record. (Doc. No. 40 at 4).The plaintiff continued to complain of pain and eventually a doctor at USP-McCreary recommended that he wear a Holter monitor to evaluate his condition. (Doc. No. 40 at 6). On December 14, 2009, the plaintiff was transferred to USP-Lewisburg before undergoing the Holter monitor evaluation at USP-McCreary.

Upon his arrival at USP-Lewisburg, the plaintiff was given an intake evaluation which included discussion of his stab wounds and related injuries. (Doc. No. 30 at 2). On December 18, 2009, the plaintiff met with Defendant Dr. Pigos at the prison's chronic care clinic and the plaintiff complained of chest pains. Pain medications were prescribed and a cardiac consultation was requested. On January 14, 2010, the plaintiff participated in a video tele-psychiatry clinic after complaining of anxiety and panic attacks.

On March 22, 2010, the plaintiff was returned to Kentucky to appear in court. (Doc. No. 40 at 7). On April 15, 2010, the plaintiff escaped from custody and evaded law enforcement for a period of at least two days.

On April 22, 2010, the plaintiff was evaluated at the Federal Medical Center in Lexington, Kentucky (hereinafter "FCM-Lexington"). (Doc. No. 40 at 8). Defendant Dr. Holbrook conducted the exam and found no emergency medical condition requiring that the plaintiff be seen by a cardiologist. (Doc.

4

No. 40 at 8). On June 16, 2011, the plaintiff was seen in the chronic care clinic and again expressed concern over the hole in his heart. An EKG was done with normal results and a long rhythm strip showed no irregular beats. (Doc. No. 30 at 5). The plaintiff contends that Dr. Holbrook summarily decided to suspend all medical care either because the plaintiff had escaped from custody or because he wished to defer any care responsibilities on to the plaintiff's permanent facility. (Doc. No. 40 at 8-10). The plaintiff asserts that the decision to suspend all medical care to him was perpetrated at FMC-Lexington by Dr. Holbrook, his supervisor, Dr. Growse and Associate Warden Coll. (Id. at 10). Specifically, the plaintiff asserts the defendants falsified records to indicate that the plaintiff did not need surgery or other care[4] and then filed these records in the Bureau Electronic Medical Record System ("BEMRS") file. (Id. at 11). The defendants assert that, despite the plaintiff's belief that additional heart surgery was necessary, they did not believe it to be medically necessary and that the care he received was consistent with his medical needs.

---

[4] The plaintiff also asserts that a liver biopsy related to his diagnosis with Hepatitis C was cancelled. (Doc. No. 40 at 9). The plaintiff states, however, that he was told that a biopsy was deemed unnecessary after the specific genotype of his Hepatitis was ascertained. (Doc. No. 1 at 41-42). In addition, the plaintiff states that it took an inordinately long period of time to receive new eyeglasses. (Id.).

On July 1, 2011, the plaintiff returned to USP-Lewisburg and an intake exam was performed. On September 2, 2011, the plaintiff had an echocardiagram which showed a normal heart size and normal heart function. (Doc. No. 30 at 5). The plaintiff does not agree that his results were normal. (Doc. No. 39 at 11). Medical personnel determined that the perimembranous hole did not show a detrimental effect on overall blood flow or functioning of the plaintiff's heart. (Doc. No. 30 at 5). Again, the plaintiff does not agree with the medical findings. (Doc. No. 39 at 11).  On October 3, 2011, the plaintiff again met with doctors and discussed concerns about his heart. The doctors discussed the "favorable findings" of the echocardiogram and expressed their doubts that surgery would be recommended at that point in time. (Doc. No. 30 at 6). Again, the plaintiff disagrees that the findings were favorable. (Doc. No. 39 at 12). Finally, the defendants assert that medical records also indicate that in February 2012, the plaintiff wore are a Holter monitor for twenty-four hours and that the monitor showed normal heart function. (Doc. No. 30 at 6).

The plaintiff alleges violations of his Fifth, Eighth and Fourteenth Amendment rights. In addition he claims conspiracy among the defendants in violation of 42 U.S.C. §1985 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Finally, the plaintiff claims discrimination under

the Americans with Disabilities Act ("ADA"). The plaintiff seeks monetary damages in the amount of five million dollars. In addition the plaintiff seeks to enjoin any retaliatory action by the defendants, to preclude his transfer to another facility and to direct the defendants to perform the allegedly necessary heart surgery. Finally, the plaintiff asks that the defendants be terminated from their positions and incarcerated due to their alleged RICO violations. (Doc. No. 1 at 79-80).

## II.    PROCEDURAL HISTORY

On August 30, 2011, the plaintiff filed his initial complaint, (Doc. No. 1). On July 2, 2012, the plaintiff's filed the instant motion to dismiss or, in the alternative, for summary judgment, (Doc. No. 27). In support of their motion, the defendants filed a brief which includes twenty-four attachments comprising affidavits and medical records, (Doc. No. 29), and a statement of material facts, (Doc. No. 30). On August 16, 2012, the plaintiff filed a brief in opposition, (Doc. No. 38), an answer to the defendants' statement of facts, (Doc. No. 39), and a counter-statement of material facts which includes nearly 300 pages of attached exhibits, (Doc. No. 40). In addition, on July 30, 2012, the plaintiff filed a 53-page exhibit, (Doc. No. 36).

## III.   STANDARD OF REVIEW

As an initial matter, it is important to note that this court is required to liberally construe a *pro se* plaintiff's pleadings; "however inartfully pleaded," the "allegations of [a] *pro se* complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In doing so, the court is to "apply the applicable law irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 687 (3d Cir. 2002). Nevertheless, a court need not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997).

To the extent that the defendants' motion seeks dismissal of the action for failure to state a claim, it is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct.

1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.2002). However, the court

may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994).

The defendants have moved, in the alternative, for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D.Pa.1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir.2004).

Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir.2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir.2003); *see also Celotex*, 477 U.S. at 325.  If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir.1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other

facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir.2007).

## IV.   DISCUSSION

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390 (1971), the Supreme Court held that constitutional violations by "a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." *Bivens* does not create any substantive rights; rather, it allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

### A. Fifth and Fourteenth Amendment Equal Protection

The Fourteenth Amendment of the United States Constitution provides, in relevant part, that "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every

person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Rivera v. Lebanon Sch. Dist*., 825 F. Supp. 2d 561, 565 (M.D. Pa. 2011)(quoting *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Though the Fifth Amendment does not contain an equal protection clause applicable to Federal actors, the Supreme Court has construed equal protection as an element of the Fifth Amendment's Due Process Clause that is akin to the Fourteenth Amendment's equal protection provisions. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). To state an equal protection claim a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his protected class, and (3) the discrimination was purposeful or intentional rather than incidental. See *id.*, *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423-24 (3d Cir.2000).

The plaintiff's complaint fails to establish the required elements. He has not established that either his medical condition or his status as an escapee places him in a protected class. In addition, though the plaintiff believes his medical care has been inadequate, he has failed to put forth any evidence that his care was different from that of similarly situated individuals. Finally,

13

though the plaintiff may believe the doctors intentionally discriminated against him, his unsupported assertions are ultimately irrelevant in light of his failure to establish the other elements to a due process claim. As such, the plaintiff's due process claims should be dismissed.

### B. Fifth and Fourteenth Amendment Due Process

The plaintiff has not indicated whether the alleged violations of due process are procedural or substantive in nature. The plaintiff has not alleged failures related to prison misconduct hearings or other areas of prison life where procedural due process challenges traditionally arise. As such, the court will construe the plaintiff's claim as an allegation of a violation of his substantive due process rights.

Substantive due process can be used to protect a right to medical care. *See Cooleen v. Lamanna*, 248 Fed. Appx. 357, 361 (3d Cir. 2007) Substantive due process rights have been invoked by pre-trial detainees and other nonconvicted persons seeking medical care who cannot invoke the Eighth Amendment. *See id.* (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir.1987)*("Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause

[which similarly] requires the government to provide appropriate medical care.")). However, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997)). Here, the plaintiff can and has brought an Eighth Amendment claim, therefore, a substantive due process claim raised on the same grounds should be dismissed.

### C. Americans with Disabilities Act

The plaintiff does not specify under which provision of the Americans with Disabilities Act ("ADA") he believes his claim arises. The court, however, will construe his claim of discriminatory denial of services under Title II of the ADA. Title II of the ADA provides, in relevant part: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. The plaintiff generally alleges that he is disabled by the injury to his

heart and that prison officials have denied his access to the necessary surgery. The plaintiff has failed to establish that allegedly inadequate care was provided because of his disability. As such, the ADA claim should be dismissed.

### D. Racketeer Influenced and Corrupt Organizations Act

The plaintiff alleges that prison doctors violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by using the prison electronic medical records system to share falsified medical records. RICO provides a private right of action to recover treble damages, attorney's fees, and costs of suit "for any person injured in his business or property by reason of a violation of [18 U.S.C. §1962]." *Kolar v. Preferred Real Estate Invs., Inc.*, 361 Fed. Appx. 354, 359 (3d Cir.2010) (quoting 18 U.S.C. §1964(c)). In order to plead a violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). An initial requirement, however, is that a plaintiff suffer an injury to his "business or property" to have standing to bring a RICO claim. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir.

2000). Here, the plaintiff claims that the alleged RICO activities hindered his ability to receive heart surgery. He has not alleged any injury to his business interests or property, nor are any such interest implicated in a medical care claim. As such, the plaintiff does not have standing to bring a RICO claim and the claim should be dismissed.

### E. Eighth Amendment

To state a claim under the Eighth Amendment for denial of medical care, a prisoner-plaintiff must show that the defendants were deliberately indifferent to his serious medical need. See *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A "serious" medical need is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987), *cert. denied*, 486 U.S. 1006 (1988). Deliberate indifference occurs when an official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, to successfully state a claim, a plaintiff must allege that the defendant acted with a sufficiently culpable state of mind, *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), and must in some way

"connect[] his factual allegations to the alleged mental states" of the defendants, *Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir.2004).

Mere negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Estelle*, 429 U.S. at 106; *Spruill*, 372 F.3d at 237; *Lanzaro*, 834 F.2d at 346. "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.1993), and courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.*" Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D.Pa.1996) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979)). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir.1990).  Nevertheless, "whether or not a defendant's conduct amounts to deliberate indifference has been described as a classic issue for the fact finder." *Goodrich v. Clinton County*

18

*Prison*, 214 Fed.Appx. 105, 111 (3d Cir. 2007) (quoting *A.M. ex. rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.*, 372 F.3d 572, 588 (3d Cir. 2004)).

The court will evaluate this issue under a motion for summary judgment standard and examine the extensive evidence of medical care filed by both parties. The plaintiff does not dispute that he has been seen by numerous doctors, both at various prison facilities and by outside specialists, since the 2008 stabbing incident. Rather, his dispute is with the level of care he has received and, in particular, the alleged failure of prison doctors to follow through with what the plaintiff believes to be necessary heart surgery. The voluminous medical records submitted by both parties contain evidence of continued and vigilant monitoring of the plaintiff's condition as well as objective evidence that the plaintiff's heart function is not in the dire straits he believes it to be. (Doc. No. 40 Att. 3 at 55). Therefore, the plaintiff's claims are akin to malpractice claims and do not amount to a constitutional violation.

The plaintiff does raise two allegations which, if true, could demonstrate care which had fallen to the level of deliberate indifference. Specifically, he claims that doctors falsified his medical records and denied his care because it was not convenient for them at his temporary facilities. The plaintiff's medical records, however, settle any potential issues of material fact in favor

of the defendants and show that all medical decisions were based on sound professional judgment which the court will not second guess.

With regard to the claims that doctors falsified his medical records, the plaintiff asserts that he never told doctors that he was able to do numerous pushups, which doctors used as part of their diagnosis of the strength of the plaintiff's heart. (Doc. No. 1 at 68).  The plaintiff's medical records, however, do not solely assert that the plaintiff made such statements, but rather that the plaintiff was" witnessed in rec cage doing 4 sets of 30 rapid fire push ups, and sprinting around the rec area." (Doc. No. 40 Att. 2 at 95). In addition, another report notes a doctor's description that the plaintiff "maintains a very muscular build," which is consistent with the observation of physical activity. (Doc. No. 40 Att. 3 at 45). Moreover, the defendants submitted an affidavit of Dr. Pigos attesting to the accuracy of the medical records. (Doc. No. 29 Att. 1 at 21). The medical records demonstrate reliance on personal observation of the plaintiff's physical activity and therefore the plaintiff's bald assertion that such knowledge was fabricated is insufficient to support his claim.

The plaintiff also claims that he was prevented from having the allegedly necessary heart surgery because it was inconvenient for prison officials and/or as retribution for his recent escape. (Doc. No. 1 at 76-78). The

defendants do no dispute that the plaintiff's temporary status played a role in the course of his medical care; however, all decisions to defer certain treatments or evaluations were in line with their professional opinions. In a medical record dated December 22, 2010, for example, Dr. Holbrook noted that "cardiac eval needs done but can be safely deferred until transfer to designated facility." (Doc. No. 40 Att. 3 at 31). Similarly in a report dated March 22, 2011, Dr. Holbrook noted that "IM has traumatic functional PDA per report of his last cardiac cath last year. Dr. Booth has reviewed these films and finds that deferred surgical repair can be safely deferred until his [sic] reached his security declared destination." (Doc. No. 40 Att. 3 at 34). These reports demonstrate that though the specific course of treatment may have been affected by the plaintiff's changing facilities and security status after his escape, no necessary care was denied. Moreover, there is no indication in the record, beyond the plaintiff's assertions, that care was denied as retaliation for his escape.

In sum, the plaintiff's general complaint regarding alleged failure to perform surgery to repair his heart is akin to a claim of malpractice and does not rise to the level of a constitutional violation. With regard to his specific allegations of falsification of records and retaliatory delays in care, which

could be evidence of deliberate indifference to his condition, review of the record resolves any genuine issues of material fact. As such, the defendant's motion for summary judgment should be granted with respect to the plaintiff's Eighth Amendment claim.

### F. §1985 Conspiracy

Finally, section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim under §1985(3) a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *See Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir.2006) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)).

In considering the plaintiff's conspiracy claim, conclusory and vague

allegations will not support a conspiracy claim, *see* [*Tindell v. Beard*, 351 Fed.Appx. 591, 594 (3d Cir. 2009) (per curiam)](nonprecedential) (*citing Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989)); [*Adams v. Teamsters Local 115, 214 Fed.Appx. 167, 175 (3d Cir. 2007)*](nonprecedential). A plaintiff must allege with particularity and present facts which show that the alleged conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive the plaintiff of a protected federal rights. *See D.R. by* [*L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir.1992)](.).

Here, the court has determined that all claims of deprivation should either be dismissed or summary judgment should be granted in favor of the defendants. Without an underlying violation, no conspiracy claim can survive. Moreover, the plaintiff has not plead, with sufficient particularity, any planning or agreement of the parties to carry out a conspiracy against the plaintiff. Therefore, in light of the court's determination that no civil rights violations have occurred, the plaintiff's §1985 conspiracy claim should be dismissed.

**THEREFORE, THE COURT HEREBY RECOMMENDS, THAT:**

(1)    The defendants' motion to dismiss or, in the alternative, for

summary judgment, (Doc. No. 27), be **GRANTED**;

(2)    The Clerk of the Court be directed to close the case.

_Malachy E. Mannion_
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: December 20, 2012**
O:\shared\REPORTS\2011 Reports\11-1628-02.wpd

24